IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JESSE RUSSELL SIMPSON, pro se,
Plaintiff,

v.                                          Case No. 3:19-cv-00078

P. HORNING,
FOOD SERVICE ADMINISTRATOR,
INDIVIDUAL AND OFFICIAL CAPACITY,
Defendant 1,

R. FORLINA,
CORRECTIONAL COUNSELOR,
INDIVIDUAL AND OFFICIAL CAPACITY,
Defendant 2,

S. MILES,
UNIT MANAGER,
INDIVIDUAL AND OFFICIAL CAPACITY,
Defendant 3,

V. MOSER,
WARDEN,
INDIVIDUAL AND OFFICIAL CAPACITY,
Defendant 4,

Dr. Rubinowiks,
INDIVIDUAL AND OFFICIAL CAPACITY,
Defendant 5,

LORETTO FCI MEDICAL STAFF MEMBERS,
INDIVIDUAL AND OFFICIAL CAPACITIES,
Defendants 6,

LORETTO FCI PSYCHOLOGY STAFF MEMBERS,
INDIVIDUAL AND OFFICIAL CAPACITIES,
Defendants 7,



FILED
AUG 20 2019
CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

## SECOND AMENDED CIVIL ACTION FOR DISABILITY ACCOMMODATION

### INTRODUCTION

Comes now, JESSE RUSSELL SIMPSON, Plaintiff, acting in his pro se capacity,

bringing forth this civil action pursuant to Bivens v. Six Unknown Federal

Agents, the Americans with Disabilities Act of 1990 ("ADA"), and Section 504

of the Rehabilitation Act.  Plaintiff is currently confined at Loretto FCI.

He is serving a sentence of 33 months imprisonment imposed by the US District

Court for the Northern District of Georgia to run concurrent with a sentence of 50 months imprisonment imposed by the US District Court for the Eastern District of Michigan.   This is the second amended complaint for this action. Plaintiff has no other lawsuits which deal with the same facts involved in this action.   The above named defendants knowingly and willfully violated the Americans with Disabilities Act of 1990, Section 504 of the Rehabilitation Act, and the Eighth Amendment of the United States Constitution.

<u>STATEMENT OF CLAIM</u>

A.   Date of event:  April 21, 2019 to present

B.   Place of event:  Loretto FCI

C.   Facts of case and steps taken:

Prior to incarceration, Plaintiff was diagnosed with Social Anxiety Disorder and Asperger's Syndrome.  He is currently prescribed and taking four mental health medications, all prescribed to combat his severe social anxiety. After his arrival to Loretto FCI on April 12, 2019, Plaintiff attempted to eat in the dining hall with other inmates unsuccessfully on two occasions.  As a result, he suffered from severe panic attacks due to the extreme close proximity of other aggressive inmates while eating.  Because of this, he resorts to eating solely out of the inmate commissary at his own expense. Unfortunately, the selection is poor and, because of his dietary restrictions, his health is suffering as a result.

On April 21, 2019, Plaintiff submitted an electronic Request to Staff to the Loretto FCI Food Service Administrator, P. Horning, requesting "the most practical and easiest to implement solution" to allow him to eat away from large crowds of inmates.  He initially offered eating before the other inmates with the dining hall staff as a potential solution.  On April 22, 2019, Horning responded that Plaintiff is not allowed to eat with the dining hall staff because he does not work in Food Service.  On April 28, 2019, Plaintiff suggested his food be provided in a disposable container so he could eat in any other location than the Dining Hall, similar to medical and religious accommodations provided for various inmate groups.  On April 29, 2019, Horning responded that Plaintiff's "request for special feeding requirements is not allowed by Food Service Policy, 4700.06."

On May 5, 2019, Plaintiff submitted an Administrative Remedy Informal

3

Resolution Form to Counselor Forlina requesting "to take food out of the dining hall in a disposable container, ... having [him] eat in the back room, earlier or later than other inmates or any other solution that permits [him] to avoid large crowds of people."  In the request, Plaintiff stated he was requesting "accommodation under the ADA" and cited 42 USC § 12102 and explained his mental disorders.

On or about May 8, 2019, at approximately 0830hrs, Plaintiff was called to Food Service by Horning to discuss his request in person.  Horning stated, "I can't have you taking food out of the chow hall because it's not sanitary.  If you take food out, you'll get people sick."  Horning refused to offer any solution to this issue other than a complete blanket denial.  He went on to say, "You can keep complaining and pushing everything up, but, I'm telling you right now, the answer from the Warden, Regional, and everyone will be the same as what I put on the BP-8."  This statement alone is indicative of bad faith on part of staff and highlights the Administrative Remedy Program as merely an exercise in futility, even for an issue as serious as health and starvation.

On May 9, 2019, Forlina delivered Horning's written, signed response and returned the Informal Resolution form.  Horning stated, "It is not allowed within Food Service Policy, Program Statement 4700.06, Food Service Manual, to allow for potentially hazardous foods to be served and removed from the dining room.  There are no locations outside of the dining room where meals can be consumed within policy."  This is completely untrue.  It is clearly within policy to eat food in the housing units where hot cooking water and purchased commissary food items are available to inmates.  Food Service also frequently provides take out food to inmates with Diabetes and inmates of certain faith groups.  Furthermore, on July 4, 2019, Food Service provided bagged dinners to the entire inmate population so staff could go home early.  The response also

does not address all of the offered suggestions such as eating earlier or later than other inmates.    Prior to delivering Horning's response, Unit Manager Miles signed the Informal Resolution Form under "Review Prior to Issuance of BP-9".    Miles and Forlina knowingly and willfully signed off on Horning's denial, allowing Horning to directly violate federal law to Plaintiff's detriment.

On May 13, 2019, at approximately 1150hrs, Plaintiff submitted a formal Request for Administrative Remedy about this issue to Forlina.    This form was then transferred to Warden Moser and she subsequently denied the request and did nothing to remedy the issue.    As Warden of Loretto FCI, Moser is responsible for the health and safety of the inmates.    Instead of rectifying this non-compliance with federal law, Moser chose to ignore it to Plaintiff's detriment.

Plaintiff appealed Moser's denial to the Northeast Regional Director on or about June 7, 2019.    On June 26, 2019, the Northeast Regional Office Administrative Remedy Coordinator issued a rejection notice fraudulently stating Plaintiff did not attach the correct number of continuation pages, in a similar fashion as most of Plaintiff's other Northeast Regional Appeals. Plaintiff resubmitted it with the same number of attachments (four), one more than required by the Administrative Remedy Program Statement but it is clear the BOP is trying to deny him access to the Appeals process in bad faith.

Plaintiff met with a medical officer and an Asian-American pharmacist shortly after arriving to Loretto FCI and explained his increased level of anxiety and the issues he was having.    Their solution was to increase Plaintiff's Remeron 30MG prescription to 45MG.    Plaintiff met with Dr. Rubinowiks and explained that he was not able to eat in the dining hall because of the large crowds of aggressive inmates.    He stated that Psychology

has nothing to do with Food Service and if Plaintiff requires specific eating accommodations, he must request them through Food Service. Plaintiff went back to medical and spoke with PA Hoover about his anxiety and panic attacks and she prescribed him Sertraline 50MG for anxiety. The medication is merely a bandaid and does not solve his issues eating. No amount of medication will prevent the panic attacks and mental distress from eating in such large crowds of people.

Because this issue is serious, time-sensitive, and critical to Plaintiff's health and safety, as eating is a major life function, and the BOP is intentionally trying to deny him access to formal reviews of the issue, the prison grievance procedure is inadequate and detrimental to the well-being of Plaintiff. Horning has also already stated that the appeals of his decision would be futile. Plaintiff must be provided means to eat.

## ARGUMENT

### GROUND 1

Loretto FCI staff violated the federal Americans with Disabilities Act by refusing to provide Plaintiff with a reasonable accommodation to eat from Food Service.

The federal ADA, 42 U.S.C.S. § 12101 et seq., applies to civilians as well as prisoners according to Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 118 S. Ct. 1952 (1998). Under Title II of the ADA, the "public entity" sections, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." Plaintiff requested a reasonable accommodation to facilitate a major life activity, in this case, eating. Plaintiff has been diagnosed with multiple mental illnesses and regularly receives multiple prescription anti-anxiety medications to help deal with these issues. Plaintiff experiences such severe anxiety by being in close proximity to large crowds that he cannot cope with the severe mental distress and panic attacks and is deprived of the benefits offered by Loretto FCI Food Service, specifically, nutritionally complete, balanced meals three times per day. See Scott v. Garcia, 370 F. Supp. 2d 1056, 1074-75 (S.D.Cal. 2005) (holding that eating is a major life activity, and a plaintiff with stomach and digestive problems raised a material factual issue under the ADA where he submitted evidence that he was denied access to the prison meal service by not being given enough time to eat or the option to eat small frequent meals).

Plaintiff meets the ADA requirements of a "qualified individual with a disability" as he has a mental impairment that limits one or more of the major

life activities of an individual and has a record of such impairment as required by 42 U.S.C.S. § 12132. As previously evidenced in Scott, eating is a major life activity.

Furthermore, the ADA Amendments Acts defines the major life activity of "eating" directly in statute. Plaintiff is also a "qualified person with a disability" who "with or without reasonable modifications to rules, policies, or practices, ... or the provision of ... services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities". See Miller v. King, 384 F.3d 1248, 1266 (11th Cir. 2004) (discussing "qualified" requirement in prison context).

Because Loretto FCI prison officials refuse to let Plaintiff take food from the dining hall or eat with smaller crowds of inmates (shortline feeding), Defendants have wrongfully deprived Plaintiff of the benefits and services provided by Loretto FCI Food Service. Services, programs, and activities include essentially, "anything a public entity does", and almost any official activity in which prisoners participate or are required to participate, in prisons, jails, and other custodial or correctional institutions is within the scope of the ADA. See Crawford v. Indiana Dep't of Corrections, 115 F.3d 481, 583-84 (7th Cir. 1997) (educational programs and use of library and dining hall are programs of a public entity) and Bane v. Virginia Dep't of Corrections, 267 F. Supp. 2d 514, 522-23 (W.D.Va. 2003) (holding general rehabilitative and correctional activities of prisons are "programs" under the statute, and prison officials are obliged to accommodate disabilities in day-to-day prison operations).

Plaintiff is a victim of disparate treatment, as Loretto FCI demonstrated hostility toward disabled persons and this hostility was a significant factor in prison officials' actions in refusing extremely basic change to eating

procedures for Plaintiff (schedule, group, location, or otherwise), to prevent him from being placed in a large crowd to accommodate his social anxiety and his severe illnesses.   See Love v. Westville Correctional Center, 103 F.3d 558, 560 (7th Cir. 1996) (affirming damage award where quadriplegic prisoner was held in infirmary and was unable to use recreational, dining, and visitation facilities and unable to participate in prison programs).

Plaintiff is also a victim of disparate impact, as Loretto FCI Food Service policies have an unlawful discriminatory effect on a protected class.

Plaintiff is also a victim of Defendants' repeated failure to make a reasonable accommodation for Plaintiff's disabilities.   Plaintiff is a qualified individual with a disability that with reasonable modifications to rules, policies, or practices, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by Loretto FCI Food Service, a public entity.

Loretto FCI Food Service could trivially accommodate Plaintiff's request for an ADA accommodation but does not out of hostility towards Plaintiff's disability.   Food Service regularly gives out bagged meals for all inmates during holidays, gives inmates with diabetes take out food every day to a large number of inmates, regularly gives Jewish inmates take out food to celebrate Shabbos meal in synagogue service, gives Native Americans take out food for "sweat lodge" rituals, gives Muslims breakfast bags during Ramadan holiday month, and gives Wiccan inmates take out food for their ceremonies. Clearly, many inmates are being allowed to take food out of Food Service for religious, medical, and convenience reasons.   Certainly, it would be trivial for Loretto FCI prison officials to make a small accommodation for plaintiff to maintain compliance with the ADA, and to ensure that Plaintiff can fulfill the major life activity of eating.

In fact, Defendants gave Plaintiff a single bagged take out meal on July 4, 2019, the only bagged meal ever issued by Defendants to Plaintiff, merely so Food Service could go home early.  This thereby demonstrates it is not an impossibility or severe burden on prison staff to issue Plaintiff a bagged meal.  See Arlt v. Missouri Dep't of Correction, 229 F. Supp. 2d 938, 944 (E.D.Mo. 2002) (holding that initial denial of accommodation of visually impaired and learning-disabled prisoner taking a GED exam was unreasonable because defendants later did what he asked, showing it was reasonable).

It is not a defense for BOP officials to claim they treat everyone badly and therefore do not discriminate against the disabled.  The ADA requires public entities to reasonably accommodate disabilities regardless of whether people are treated the same or differently.  See Henrietta D. v. Bloomberg, 331 F.3d 261, 276-77 (2d Cir. 2003) ("[W]e hold that a claim of discrimination based on a failure reasonably to accommodate is distinct from a claim of discrimination based on disparate impact.  Quite simply, the demonstration that a disability makes it difficult for a plaintiff to access benefits that are available to both those with and without disabilities is sufficient to sustain a claim for a reasonable accommodation.").

If access is unusually difficult or painful, reasonable accommodations must be provided.  It is noteworthy to mention that disability statutes provide a more favorable standard for prisoners than the US Constitution.  See Randolph v. Rogers, 980 F. Supp. 1051, 1058 (E.D.Mo. 1997), reversed in part, vacated in part on other grounds, 170 F.3d 850 (8th Cir. 1999). the court held that failure to provide a sign language interpreter did not deny due process because the prisoner's 30-day segregation terms were not atypical and significant, but his ADA claim was allowed to go forward.

The reasonable accommodation requirement described above contrasts sharply

with the reasonableness standard applied to other prisoner claims by Turner v. Safley, which requires that prisoners come up with "de minimis cost" solutions in order to prevail.   While cost is a consideration under the disability statutes, there is no general rule that only "de minimis cost" can be required.   See Pennsylvania Protection and Advocacy, Inc. v. Pennsylvania Dep't of Public Welfare, 402 F.2d 374, 380-81 (3d Cir. 2005) (holding that budget constraints do not establish a fundamental alteration defense).

Considering these facts, Plaintiff's claim should prevail under the federal ADA.

## GROUND 2

Loretto FCI staff violated the Rehabilitation Act by refusing to provide Plaintiff with a reasonable accommodation to eat from Food Service.

It is well established that the Rehabilitation Act applies to prisoners. See Harris v. Thigpen, 941 F.3d 1495, 1522 n.41 (11th Cir. 1991); Bonner v. Lewis, 857 F.2d 559 (9th Cir. 1988); Chisolm v. McManimon, 275 F.3d 315, 327 (3d Cir. 2001). Section 504 of the Rehabilitation Act requires that "[n]o otherwise qualified individual with a disability in the United States, ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency. ..." 29 U.S.C.S. § 794(a). "Executive agency" in this statute refers to federal agencies. This means that any agency that receives any federal funding is covered by the Rehabilitation Act for all of its services, programs, and activities. Department of Justice regulations promulgated under the statute are applicable to prisons and jails.

The definition of a disability is extremely similar to the ADA's definition. It is noteworthy that even though expert medical testimony is not required to establish the existence of a disability, medical records from Dr. Minassian, and many other doctors on record with the BOP, confirm Plaintiff has Asperger's Syndrome, Major Depression, and PTSD symptoms. Years before Plaintiff's arrest, Plaintiff was diagnosed by a psychiatrist in Maryland with Social Anxiety Disorder and treated him with prescription medication. In fact, BOP medical staff currently treats Plaintiff with FOUR mental health medications to combat social anxiety. Clearly, Plaintiff has an extensive history of medical professionals documenting his mental illnesses and anxiety.

Plaintiff requires an accommodation because he is unable to participate in eating at Food Service without an accommodation due to extreme mental distress and panic attacks, induced by his severe anxiety when in a large crowd of people. Since eating is a major life activity, it is of paramount importance that Defendants make a reasonable accommodation for him to eat.

The meaningful accommodation rule requires Defendants to provide "meaningful access" to programs that persons with disabilities are otherwise entitled to. See Alexander v. Choate, 469 U.S. 287, 301, 105 S. Ct. 712 (1985) (under the Rehabilitation Act, "an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers. ... [T]o assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made.").

Plaintiff repeatedly asked Defendants for a reasonable accommodation to resolve his inability to benefit from Loretto FCI Food Service but he was denied every time due to Defendants' hostility toward disabled Plaintiff. In addition to the disparate treatment problem, the rules and policies implemented by Loretto FCI prison officials have an unlawful discriminatory effect upon disabled persons. By accommodating only certain activities, religious and medical groups, and classes of inmate workers to allow access to the benefits of taking food out of Food Service, Defendants' seemingly nuetral rules and policies have an unlawful discriminatory impact on mentally disabled persons. Lastly, Defendants failed to make reasonable accommodations for Plaintiff's disablitity. Plaintiff is otherwise qualified to eat and benefit from services provided by Loretto FCI Food Service but is unable to do so due to Defendants' refusal to make reasonable modifications to rules, policies, or practices. Loretto FCI Food Service unquestionably is a public entity and provides programs, activities, and services to Loretto FCI inmates.

Plantiff's requested accommodations are reasonable and do not impose "undue financial and administrative burdens" or require "a fundamental alteration in the nature of [the] program."  As previously documented, Defendants already provide Plaintiff's requested accommodation to other inmates, but not to Plaintiff who requires it for his disablitity.

Considering these facts, Plaintiff's claim should prevail under the Rehabilitation Act.

## GROUND 3

Loretto FCI staff subjected Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment by refusing to provide necessary accommodations to eat from Loretto FCI Food Service.

Food is one of the basic necessities of life protected by the Eighth Amendment. See Knop v. Johnson, 667 F. Supp. 512, 525 (W.D.Mich 1987), aff'd in pertinent part, 997 F.2d 996, 1000 (6th Cir. 1992); accord, Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996), amendmed, 135 F.3d 1318 (9th Cir. 1998). Deprivation of food for a substantial time, in this case for over three months, less one day, violates the Constitution. See Reed v. McBride, 178 F.3d 849, 853 (7th Cir. 1999) (deprivation of food may violate the Eighth Amendment depending on the "amount and duration of the deprivation"; allegations of repeated three- to five-day deprivation of food stated a claim); Simmons v. Cook, 154 F.3d 805, 808-09 (8th Cir. 1998) (affirming damage award to paraplegic prisoners who missed four consecutive meals when placed where they could not get to their food trays in their wheelchairs); Green v. Johnson, 977 F.2d 1383, 1391 (10th Cir. 1992) (allegations of 72-hour reduction in rations stated a claim); Woods v. Thieret, 903 F.2d 1080, 1082 (7th Cir. 1990) (allegation of three-day denial of food stated a constitutional claim); Dearman v. Woodson, 429 F.2d 1288, 1290 (10th Cir. 1970) (two days' deprivation of food stated a constitutional claim); Hodge v. Reperto, 739 F. Supp. 873, 876 (S.D.N.Y. 1990) (two and a half day denial of food prior to arraignment stated a constitutional claim); Willis v. Bell, 726 F. Supp 1118,1121-22 (N.D.Ill. 1989) (12-hour deprivation of food in police lockup, if intentional, was "obviously" unlawful).

It is established case law that prison officials have a constitutional obligation to accommodate special diets required for medical reasons, and to

provide religious diets.   Under the Eighth Amendment, prison officials must meet the medical needs of prisoners with disabilities and furnish the assistance they require in order to live a minimally decent life in prison. As on court put it, "the prison authorites must take the prisoner as they find him and provide facilities compatible with his physical condition that meet civilized standards of decency."  See Ruiz v. Estelle, 503 F. Supp. 1265, 1345 (S.D.Tex. 1980) ("The fact that unusual accommodation may be necessary, in light of their special needs, to accomplish the provisions of minimal conditions of incarceration does not absolve prison officials of their duty toward handicapped inmates."), aff'd in part and vacated in part on other grounds, 679 F.2d 1115 (5th Cir. 1982).  In determining whether a prisoner has a serious medical needs, courts consider whether their medical condition causes disability or interferes with daily activities.

Plaintiff's long standing, pre-incarceration medical diagnoses include Social Anxiety Disorder, Asperger's Syndrome, Major Depression, and PTSD symptoms, and require him to eat three meals per day without being in a situation that induces panic attacks or extreme mental distress.  Eating is unquestionably a daily life activity and Plaintiff's mental illnesses are significant enough to warrant some kind of accommodation from prison officials at Loretto FCI.  Despite Plaintiff's repeated requests to eat physically separate from large crowds of people, prison officials have refused every resolution requested while refusing to offer any sort of compromise.

Plaintiff requested permission to take his meals out of the Dining Hall to eat in his cell or to eat at a different time than other inmates.  Many prisons require inmates to eat in their cells, so any argument Defendants offer concerning "safety and security" would be arbitrary, capricious, and nonsensical.  In fact, Special Housing Unit inmates at Loretto FCI always eat

three meals per day in their cells.   In administrative responses to Plaintiff's meal arrangement requests, Horning refused to allow Plaintiff to eat at shortline, a lunch provided only to the few inmates working in the kitchen, instead of a large crowd.   In Horning's denial he writes, "shortline feeding is held for inmates who are working during the lunch mainline operation.   Also, this would not assist you with the dinner and breakfast meals, since there are no shortline movements for these meals."   Horning could trivially include Plaintiff in this meal, regardless of breakfast and dinner concerns, to help solve the issue in good faith.   Horning was provided access to Plaintiff's medical records confirming his various mental illness diagnoses and prescriptions for social anxiety medication, to include Propranolol 20MG, twice per day, busPIRone 30MG, twice per day, Setraline 50MG, once per day, and Mirtazapine 45MG, once per day, by PA Stephanie Hoover, for extreme social anxiety.   It shocks the conscience that Horning admits he could easily solve at least one of Plaintiff's meal problems by simply allowing him to eat with the smaller crowd, but he stubbornly refuses out of what can only be considered spite and malice.

Ensuring inmates eat nutritionally balanced meals on a regular basis is a major responsibility of prison officials.   In fact, the BOP will force feed inmates on hunger strike, yet they refuse to ensure that Plaintiff has food made available to him.

Considering these facts, Plaintiff's claim should prevail under the Eighth Amendment for the US Constitution.

Personal Involvement

1. P. Horning

P. Horning acted with deliberate indifference by refusing to provide eating accommodations to Plaintiff.

Plaintiff requested eating accommodations from Horning in writing three times and verbally one time.  Horning denied every request and has yet to suggest an alternative solution to allow him to eat.  Plaintiff told him multiple times that he is not eating the nutritionally balanced meals provided by Food Service because he can't eat with the current procedures, due to his mental illnesses.  The Supreme Court has held that a prison official can be found reckless or deliberately indifferent if "the official knows of and disregards an excessive risk to inmate health or safety. ...."  Farmer v. Brennan, 511 U.S. at 837.  Plaintiff advised Horning multiple times that he is not eating from Food Service.  Horning aggressively monitors inmates' use of Food Service by scanning everyone's ID before providing food at EVERY meal. In fact, Food Service staff makes TWO separate announcements prior to every meal reminding inmates to bring their IDs to the dining hall or to not come at all.  Therefore, Horning could easily verify Plaintiff's claims that he is not eating at Food Service by checking the logs.  He could also easily verify his claims of social anxiety, mental illnesses, and extensive history of anti-anxiety medications by checking Plaintiff's medical history and Pre Sentence Report, for which Plaintiff gave him explicit access to.  Horning either knows or is purposely avoiding knowledge that Plaintiff is not eating and is unable to eat and is therefore deliberately indifferent to his suffering.  See Farmer, 511 U.S. at 843 n.8; Goebert v. Lee County, 510 F.3d 1312, 1327-28 (11th Cir. 2007) (jail captain had a duty to "look into" pregnant prisoner's complaint that she was leaking fluid. her condition was worsening, and she had

not seen an obstetrician); Sanchez v. Taggart, 144 F.3d 1154, 1156 (8th Cir. 1998) (failure to try to verify claim of medical inability to perform work assignment supported deliberate indifference finding); Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995) (holding prison officials who had information about possible asbestos contamination had a duty to inspect before sending unprotected work crews to the location); Ginest v. Board of County Comm'rs of Carbon County, 333 F. Supp. 2d 1190, 1198 (D.Wyo. 2004) (officials have a duty to investigate information suggesting a risk of injury); see also Mayoral v. Sheahan, 245 F.3d 934, 940 (7th Cir. 2000) (holding jury could reject guard's testimony she knew nothing about gangs as "incredible and deliberately ignorant.  The Farmer standard is not designed to give officials the motivation to 'take refuge' in the zone between ignorance and actual knowledge," and she could be seen "as trying to inhabit that zone.").

An official who has knowledge of a serious risk or a cruel condition must "take reasonalbe measures to abate it."  Prison officials who "respond[] reasonably to the risk" are not deliberately indifferent, "even if the harm ultimately was not averted."  However, they are liable if their actions are "not adequate given the known risk," or if they give "inconsequential logistical concerns that might be no more than matters of convenience" higher priority than prisoners' basic human needs.  See Allen v. Sakai, 48 F.3d 1082, 1088 (9th Cir. 1996) (the court held that prison officials' own policy goal of five hours a week of recreation was evidence that they know of the risks of depriving prisoners of exercise, and their failure to comply with it without good reason constituted deliberate indifference.).

As the Food Service Administrator, Horning knows of the impending harm to Plaintiff's health from not eating the nutritionally balanced meals and adequate quantity of food provided by Food Service.  Plaintiff is forced to

eat only nutritionally imbalanced meals and an inadequate quantity of food from commissary, where he is unable to eat a wide variety of food because of his dietary restrictions and product offerings and is limited to $320 per month including hygiene, medicine, and other non-food products.   This impending harm to Plaintiff's health is easily preventable by implementing minor changes to rules, policies, or practices of Food Service with any of Plaintiff's suggested accommodations.   Farmer said that serious damage to prisoners' future health is actionable.   The harm does not have to be "easily preventable", though in this case it clearly is regardless;   Farmer holds that prison officials must do what is reasonable, not what is easy.   In addition, Farmer specifically said that "it is not enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm," and did not require proof that the official acted because of the risk.

Considering these facts, Horning is deliberately indifferent to Plaintiff's suffering and risk of health problems by not eating food provided by Food Service.

## 2. R. Forlina

Correctional Counselor R. Forlina acted with deliberate indifference by refusing to assist Plaintiff in obtaining eating accommodations.

Forlina knew of Plaintiff's inability to eat because he was intrinsically involved with the Administrative Remedy process. Plaintiff obtained multiple complaint forms from Forlina, and discussed the issue with him in person and at length, and then Forlina read and processed the forms and responses between Plaintiff and P. Horning. Forlina had extensive actual notice of the situation and disregarded the obvious risk to Plaintiff's health and safety. In Farmer, the courts established that prison officials who have knowledge of a serious risk or a cruel condition must "take reasonable measures to abate it." Prison officials who "respond[] reasonably to the risk" are not deliberately indifferent, "even if the harm ultimately was not averted." However, they are liable if their actions are "not adequate given the known risk," or if they give "inconsequential logistical concerns that might be no more than matters of convenience" higher priority than prisoners' basic human needs. See Allen v. Sakai, 48 F.3d 1082, 1088 (9th Cir. 1996) (the court held that prison officials' own policy goal of five hours a week of recreation was evidence that they know of the risks of depriving prisoners of exercise, and their failure to comply with it without good reason constituted deliberate indifference.).

Farmer specifically said that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm". The BOP provides adequate training, procedures, and resources to empower counselors to prevent harm to inmates under their control. Prison officials are deliberately indifferent for "knowing acquiescence in the unconstitutional behavior of ... subordinates, ... persistently violat[ing] a statutory duty to

inquire about such behavior and to be responsible for preventing it, ... failure to train or supervise ... or an official acquiescence in the continued existence of prison conditions, which, themselves, are so injurious to prisoners that they amount to a constitutional violation." Villante v. Dep't of Corrections of City of New York, 786 F.2d 516, 519 (2d Cir. 1986). Forlina was acutely aware of Plaintiff's unmet basic need to eat nutritionally balanced meals and was deliberately indifferent to Plaintiff's suffering. "Food is one of the basic necessities of life protected by the Eighth Amendment." See Knop v. Johnson, 667 F. Supp. 512, 525 (W.D.Mich. 1987), aff'd in pertinent part, 977 F.2d 996, 1000 (6th Cir. 1992); accord, Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998). Furthermore, deprivation of food for any substantial period of time can violate the Constitution. Forlina even had knowledge that Plaintiff was not eat nutritionally adequate food. Forlina was aware that Plaintiff is mentally ill. Forlina has a responsibility to ensure that prisoners with mental illnesses are not harmed by malnutrition or thirst resulting from their illnesses or from the official response to their illnesses. See Duffy v. Bryant, 950 F. Supp. 1168, 1177-78 (M.D.Ga 1997) (holding that officials who allowed a prisoner with mental illness to die of malnutrition and dehydration could be found deliberately indifferent to his medical needs).

Prison officials may be held liable for their failure to act if it results in a constitutional violation. See Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285 (1976) (medical care claims may be based on "acts or omissions"); Davis v. Rennie, 264 F.3d 86, 114 (1st Cir 2001); Alexander v. Perrill, 916 F.2d 1392, 1395 (9th Cir. 1990) (prison officials "can't just sit on your duff and not do anything" to prevent violations of rights); Lewis v. Mitchell, 416 F. Supp. 2d 935, 945 (S.D. Cal. 2005) (a person may be liable under § 1983 if

he "omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).

Officials or employees who know, or reasonably should know, that a prisoner is being treated unconstitutionally may be held liable if they fail to do anything about it.  See Greason v. Kemp, 891 F.2d 829, 839-40 (11th Cir. 1990) (warden who knew or should have known of inadequate psychiatric staffing could be held liable); Johnson v. Pearson, 316 F. Supp. 2d 307, 317-18 (E.D.Va. 2004) (officials who failed to act on second-hand smoke complaint could be held liable).  Forlina was sufficiently informed of the Eighth Amendment violation when Plaintiff gave him an in person statement and when he processed and signed Plaintiff's complaint forms and responses.  Forlina had ample time to resolve, or at least try to resolve, the ongoing eating issue but refused to do so.

Officials may be held liable for failure to make policy or to take action to prevent predictable violations of rights.  Because Forlina was actively involved in the grievance process by processing, reviewing, and signing Administrative Remedy forms and was fully aware that Plaintiff did not have access to food served by Food Service.  Forlina failed to promulgate policies or otherwise act to shape P. Horning's conduct, failed to train Horning, failed to instruct or supervise Horning, and most importantly, failed to respond to evidence of misconduct by Horning.

Considering these facts, R. Forlina is deliberately indifferent to Plaintiff's suffering and risk of health problems by not eating food provided by Food Service.

### 3. S. Miles

Unit Manager S. Miles acted with deliberate indifference by refusing to assist Plaintiff in obtaining eating accommodations.

Miles knew of Plaintiff's inability to eat because he was intrinsically involved with the Administrative Remedy process. Miles read, processed, and, in at least one case, signed the forms and responses between Plaintiff and P. Horning. Miles had extensive actual notice of the situation and disregarded the obvious risk to Plaintiff's health and safety. In Farmer, the courts established that prison officials who have knowledge of a serious risk or a cruel condition must "take reasonable measures to abate it." Prison officials who "respond[] reasonably to the risk" are not deliberately indifferent, "even if the harm ultimately was not averted." However, they are liable if their actions are "not adequate given the known risk," or if they give "inconsequential logistical concerns that might be no more than matters of convenience" higher priority than prisoners' basic human needs. See Allen v. Sakai, 48 F.3d 1082, 1088 (9th Cir. 1996) (the court held that prison officials' own policy goal of five hours a week of recreation was evidence that they know of the risks of depriving prisoners of exercise, and their failure to comply with it without good reason constituted deliberate indifference.).

Farmer specifically said that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm". The BOP provides adequate training, procedures, and resources to empower unit managers to prevent harm to inmates under their control. Prison officials are deliberately indifferent for "knowing acquiescence in the unconstitutional behavior of ... subordinates, ... persistently violat[ing] a statutory duty to inquire about such behavior and to be responsible for preventing it, ...

failure to train or supervise ... or an official acquiescence in the continued existence of prison conditions which, themselves, are so injurious to prisoners that they amount to a constitutional violation." Villante v. Dep't of Corrections of City of New York, 786 F.2d 516, 519 (2d Cir. 1986). Miles was acutely aware of Plaintiff's unmet basic need to eat nutritionally balanced meals and was deliberately indifferent to Plaintiff's suffering.

"Food is one of the basic necessities of life protected by the Eighth Amendment." See Knop v. Johnson, 667 F. Supp. 512, 525 (W.D.Mich. 1987), aff'd in pertinent part, 977 F 2d 996, 1000 (6th Cir. 1992); accord, Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998). Furthermore, deprivation of food for any substantial period of time can violate the Constitution. Miles even had knowledge that Plaintiff was not eat nutritionally adequate food. Miles was aware that Plaintiff is mentally ill. Miles has a responsibility to ensure that prisoners with mental illnesses are not harmed by malnutrition or thirst resulting from their illnesses or from the official response to their illnesses. See Duffy v. Bryant, 950 F. Supp 1168. 1177-78 (M.D.Ga 1997) (holding that officials who allowed a prisoner with mental illness to die of malnutrition and dehydration could be found deliberately indifferent to his medical needs).

Prison officials may be held liable for their failure to act if it results in a constitutional violation. See Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285 (1976) (medical care claims may be based on "acts or omissions"); Davis v. Rennie. 264 F.3d 86, 114 (1st Cir. 2001); Alexander v. Perrill, 916 F.2d 1392, 1395 (9th Cir. 1990) (prison officials "can't just sit on your duff and not do anything" to prevent violations of rights); Lewis v. Mitchell, 416 F. Supp. 2d 935, 945 (S.D. Cal. 2005) (a person may be liable under § 1983 if he "omits to perform an act which he is legally required to do that causes the

deprivation of which [the plaintiff complains]." (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).

Officials or employees who know, or reasonably should know, that a prisoner is being treated unconstitutionally may be held liable if they fail to do anything about it. See Greason v. Kemp, 891 F.2d 829, 839-40 (11th Cir. 1990) (warden who knew or should have known of inadequate psychiatric staffing could be held liable); Johnson v. Pearson, 316 F. Supp. 2d 307, 317-18 (E.D.Va. 2004) (officials who failed to act on second-hand smoke complaint could be held liable). Miles was sufficiently informed of the Eighth Amendment violation when he processed and signed Plaintiff's complaint forms and responses. Miles had ample time to resolve, or at least try to resolve, the ongoing eating issue but refused to do so.

Officials may be held liable for failure to make policy or to take action to prevent predictable violations of rights. Because Miles was actively involved in the grievance process by processing, reviewing, and signing Administrative Remedy forms and was fully aware that Plaintiff did not have access to food served by Food Service. Miles failed to promulgate policies or otherwise act to shape P. Horning's conduct, failed to train Horning, failed to instruct or supervise Horning, and, most importantly, failed to respond to evidence of misconduct by Horning.

Considering these facts, S. Miles is deliberately indifferent to Plaintiff's suffering and risk of health problems by not eating food provided by Food Service.

### 4. V. Moser

Warden V. Moser acted with deliberate indifference by refusing to assist Plaintiff in obtaining eating accommodations.

Moser knew of Plaintiff's inability to eat because she was intrinsically involved with the Administrative Remedy process and eventually directly denied his request for eating accommodations. Moser read, and processed the forms and responses between Plaintiff and P. Horning. She has direct access to Plaintiff's medical and mental health records, as well as his Pre Sentence Report. Moser had extensive actual notice of the situation and disregarded the obvious risk to Plaintiff's health and safety. In Farmer, the courts established that prison officials who have knowledge of a serious risk or a cruel condition must "take reasonable measures to abate it." Prison officials who "respond[] reasonably to the risk" are not deliberately indifferent, "even if the harm ultimately was not averted. However, they are liable if their actions are "not adequate given the known risk," or if they give "inconsequential logistical concerns that might be no more than matters of convenience" higher priority than prisoners' basic human needs. See Allen v. Sakai, 48 F.3d 1082, 1088 (9th Cir. 1996) (the court held that prison officials' own policy goal of five hours a week of recreation was evidence that they know of the risks of depriving prisoners of exercise, and their failure to comply with it without good reason constituted deliberate indifference.).

Farmer specifically said that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm". The BOP provides adequate training, procedures, and resources to empower wardens to prevent harm to inmates under their control. Prison officials are deliberately indifferent for "knowing acquiescence in the unconstitutional

behavior of ... subordinates, ... persistently violat[ing] a statutory duty to inquire about such behavior and to be responsible for preventing it, ... failure to train or supervise ..: or an official acquiescence in the continued existence of prison conditions which, themselves, are so injurious to prisoners that they amount to a constitutional violation."  Villante v. Dep't of Corrections of City of New York, 786 F.2d 516, 519 (2d Cir. 1986).  Moser was acutely aware of Plaintiff's unmet basic need to eat nutritionally balanced meals and was deliberately indifferent to Plaintiff's suffering.

"Food is one of the basic necessities of life protected by the Eighth Amendment."  See Knop v. Johnson, 667 F. Supp. 512, 525 (W.D Mich. 1987), aff'd in pertinent part, 977 F.2d 996, 1000 (6th Cir. 1992); accord, Keeman v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998).  Furthermore, deprivation of food for any substantial period of time can violate the Constitution.  Moser even had knowledge that Plaintiff was not eating nutritionally adequate food.  Moser was aware that Plaintiff is mentally ill.  Moser has a responsibility to ensure that prisoners with mental illnesses are not harmed by malnutrition or thirst resulting from their illnesses or from the official response to their illnesses.  See Duffy v. Bryant  950 F  Supp. 1168, 1177 78 (M.D.Ga 1997) (holding that officials who allowed a prisoner with mental illness to die of malnutrition and dehydration could be found deliberately indifferent to his medical needs).

Prison officials may be held liable for their failure to act if it results in a constitutional violation.  See Estelle v. Gamble. 429 U.S. 97, 106, 97 S. Ct. 285 (1976) (medical care claims may be based on "acts or omissions"); Davis v. Rennie, 264 F.3d 86, 114 (1st Cir. 2001); Alexander v. Perrill, 916 F.2d 1392, 1395 (9th Cir. 1990) (prison officials "can't just sit on your duff and not do anything" to prevent violations of rights); Lewis v. Mitchell, 416

F. Supp. 2d 935, 945 (S.D. Cal. 2005) (a person may be liable under § 1983 if he "omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir 1978)).

Officials or employees who know, or reasonably should know, that a prisoner is being treated unconstitutionally may be held liable if they fail to do anything about it. See Greason v. Kemp, 891 F.2d 829, 839-40 (11th Cir. 1990) (warden who knew or should have known of inadequate psychiatric staffing could be held liable); Johnson v. Pearson. 316 F. Supp. 2d 307  317-18 (E.D.Va. 2004) (officials who failed to act on second-hand smoke complaint could be held liable). In another case involving a paraplagic prisoner, the court observed that there was no justification in the record for the failure to provide adequate toilet facilities and necessary physical therapy for months, and that the warden was the "responsible official in charge" of the prison and was "fully advised" of the problem. Therefore, the court concluded that her neglect constituted deliberate indifference. LaFaut v. Smith, 834 F.2d 389, 392-94 (4th Cir 1987). Moser was sufficiently informed of the Eighth Amendment violation when she processed and signed Plaintiff's complaint forms and response. Moser had ample time to resolve, or at least try to resolve, the ongoing eating issue but refused to do so.

Officials may be held liable for failure to make policy or to take action to prevent predictable violations of rights. Because Moser was actively involved in the grievance process by processing, reviewing, signing, and denying Administrative Remedy forms and was fully aware that Plaintiff did not have access to food served by Food Service. Moser failed to promulgate policies or otherwise act to shape P. Horning's conduct, failed to train Horning, failed to instruct or supervise Horning, and, most importantly,

failed to respond to evidence of misconduct by Horning.

Considering these facts, Warden V. Moser is deliberately indifferent to Plaintiff's suffering and risk of health problems by not eating food provided by Food Service.

### 5. Doctor Rubinowiks

Dr. Rubinowiks acted with deliberate indifference by refusing to assist Plaintiff in obtaining eating accommodations.

Dr. Rubinowiks is chiefly responsible for and actively involved in providing Plaintiff mental health treatment while confined at Loretto FCI. Plaintiff met with Dr. Rubinowiks in person about his inability to eat in Food Service due to his multiple mental illnesses. When Plaintiff discussed his inability to eat at Food Service, Dr. Rubinowiks refused to assist Plaintiff in any way. Dr. Rubinowiks replied, "You have to take that up with Food Service. Psychology doesn't get involved with eating accommodations." Once Dr. Rubinowiks was made aware of the problem, he was deliberately indifferent to Plaintiff's inability to eat.

Deliberate indifference can be demonstrated directly by evidence of prison officials' bad motive or attitudes. Once a prisoner informs a prison official that they are not eating, they become directly aware of a dangerous situation. The Supreme Court has held that a prison official can be found deliberately indifferent if "the official knows of and disregards an excessive risk to inmate health or safety. ..." Farmer, 511 U.S. at 837. Since Dr. Rubinowiks was the responsible official in charge of mental health and was directly aware that Plaintiff was not eating due to his mental illnesses, Dr. Rubinowiks acted with deliberate indifference to Plaintiff's suffering.

A defendant need not know the precise nature of the risk to be found deliberately indifferent, as long as he knows a serious risk exists. See Farmer. 511 U.S. at 843 n.8; Goebert v. Lee County, 510 F.3d 1312, 1327-28 (11th Cir. 2007) (jail captain had a duty to "look into" pregnant prisoner's complaint that she was leaking fluid, her condition was worsening, and she had not seen an obstetrician); Sanchez v. Taggart, 144 F.3d 1154, 1156 (8th Cir.

1998) (failure to try to verify claim of medical inability to perform work assignment supported deliberate indifference finding); Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995) (holding prison officials who had information about possible asbestos contamination had a duty to inspect before sending unprotected work crews to the location); Ginest v. Board of County Comm'rs of Carbon County, 333 F. Supp. 2d 1190, 1198 (D.Wyo. 2004) (officials have a duty to investigate information suggesting a risk of injury); see also Mayoral v. Sheahan, 245 F.3d 934, 940 (7th Cir. 2000) (holding jury could reject guard's testimony she knew nothing about gangs as "incredible and deliberately ignorant.   The Farmer standard is not designed to give officials the motivation to 'take refuge' in the zone between ignorance and actual knowledge," and she could be seen "as trying to inhabit that zone.").

Once a Doctor and Chief of Psychology learns that a patient is not eating, they are aware of "an excessive risk to inmate health or safety".   Dr. Rubinowiks's extensive training puts him in a unique position relative to the other defendants.   Dr. Rubinowiks has specialized mental health training and an obligation to ensure that mentally ill persons under his care are not harming themselves or are harmed by others, to include prison officials.   Dr. Rubinowiks is uniquely aware of Plaintiff's mental illnesses and has a duty higher than other prison officials concerning mental health issues.

Considering these facts, Dr. Rubinowiks is deliberately indifferent to Plaintiff's suffering and risk of health problems by not eating food provided by Food Service.

## 6/7. Unknown Medical and Psychology Staff Members

Unknown Loretto FCI medical and psychology staff members acted with deliberate indifference by refusing to investigate Plaintiff not eating food served by Loretto FCI Food Service.

P. Horning and Warden Moser supposedly consulted with unnamed medical and psychology staff members in regards to Plaintiff's claim he is unable to eat at the Dining Hall due to mental distress and panic attacks. Plaintiff met with medical and psychology to discuss his social anxiety related issues. Medical staff raised his Remeron 30MG prescription to 45MG and, later on, PA Stephanie Hoover prescribed him Setraline 50MG as a result. This did not solve the problem. Plaintiff met with Dr. Rubinowiks and he offered no treatment or assistance in obtaining eating accommodations. Plaintiff was never consulted again to discuss his social anxiety, though he has requested individual counseling on multiple occasions.

Horning consulted unnamed medical and psychology staff members in regards to Plaintiff's complaints but no investigation was done to verify his claim of not eating at Food Service. Plaintiff is prescribed FOUR mental health medications to combat social anxiety but staff refuses to pursue non-medication solutions.

Deliberate indifference can be demonstrated directly by evidence of prison officials' bad motives or attitudes. Once a prisoner informs a prison official that they are not eating or is informed by other means, they become directly aware of a dangerous situation. The Supreme Court has held that a prison official can be found deliberately indifferent if "the official knows of and disregards an excessive risk to inmate health or safety. ..." Farmer, 511 U.S. at 837. Since these unnamed medical and psychology staff members were directly aware that Plaintiff was not eating due to his mental illnesses,

these staff members acted with deliberate indifference to Plaintiff's suffering.

A defendant need not know the precise nature of the risk to be found deliberately indifferent, as long as he knows a serious risk exists, See Farmer 511 U.S. at 843 n.8; Goebert v. Lee County, 510 F.3d 1312, 1327-28 (11th Cir. 2007) (jail captain had a duty to "look into" pregnant prisoner's complaint that she was leaking fluid, her condition was worsening, and she had not seen an obstetrician); Sanchez v. Taggart, 144 F.3d 1154, 1156 (8th Cir. 1998) (failure to try to verify claim of medical inability to perform work assignment supported deliberate indifference finding); Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995) (holding prison officials who had information about possible asbestos contamination had a duty to inspect before sending unprotected work crews to the location); Ginest v. Board of County Comm'rs of Carbon County. 333 F. Supp. 2d 1190, 1198 (D.Wyo. 2004) (officials have a duty to investigate information suggesting a risk of injury); see also Mayoral v. Sheahan. 245 F.3d 934, 940 (7th Cir. 2000) (holding jury could reject guard's testimony she knew nothing about gangs as "incredible and deliberately ignorant. The Framer standard is not designed to give officials the motivation to 'take refuge' in the zone between ignorance and actual knowledge," and she could be seen "as trying to inhabit that zone.").

Once medical or mental health practitioners learn that a patient is not eating, they are aware of "an excessive risk to inmate health or safety". These practitioners' extensive training puts them in a unique position relative to the other defendants. They have specialized health care training and an obligation to ensure that mentally ill persons under their care are not harming themselves or are harmed by others, to include prison officials. These practitioners are uniquely aware of Plaintiff's mental illnesses and

have a duty higher than other prison officials concerning health issues.

Considering these facts, the unknown and unnamed medical and psychology staff members are deliberately indifferent to Plaintiff's suffering and risk of health problems by not eating food provided by Food Service.

RELIEF REQUESTED

WHEREFORE; Plaintiff requests that the court grant the following relief:

A. Issue a declaratory judgement stating that:

    1. Defendants knowingly and willfully allowed and required Plaintiff to eat unhealthily for the duration of his confinement at Loretto FCI.

    2. Defendants knowingly and willfully disregarded a risk of impending harm to Plaintiff's health and safety.

    3. Defendants were deliberately indifferent to Plaintiff's suffering during their care.

B. Issue an injunction ordering Defendants and their agents to:

    1. Provide three take out meals to Plaintiff per day, containing the same "No Flesh" meal option, in size and offering, served in the Dining Hall to the general inmate population, at reasonable times consistent with the feeding of other inmates, for him to take back to his cell and eat away from a large crowd of people, where he is not subjected to mental distress and panic attacks.

    2. Not harass, intimidate, retaliate against, or in any way target Plaintiff as a result of this case, including but not limited to Special Housing Unit placement or other unrequested housing changes, unrequested work detail reassignment, frivolous incident reports, transfer to a different facility, or any other form of retaliation.

C. Award compensatory damages in the following amount:

    1. $250,000 jointly and severally against Defendants for deliberate indifference to the cruel and unusual punishment inflicted on Plaintiff by not providing means for him to eat nutritionally balanced meals in a situation that does not provoke extreme mental distress and panic attacks for months.

D. Award punitive damages in the following amount:

$250,000 jointly and severally against Defendants.

E. Grant such other relief as it may appear that Plaintiff is entitled.


## DECLARATION

I declare under penalty of perjury that the foregoing is true and correct to the best of my experience, knowledge, research, and ability to remember the facts.


7/31/2019

DATE

Jesse Simpson

SIGNATURE


Jesse Russell Simpson
70262-019
SPECIAL MAIL - OPEN ONLY
IN PRESENCE OF INMATE
Loretto FCI
PO Box 1000
Cresson, PA 16630