IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
JOHNSTOWN DIVISION

| | | |
|---|---|---|
| JESSE RUSSELL SIMPSON, | ) | |
| | ) | Civil Action No. 3: 19-cv-00078 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Chief United States Magistrate Judge |
| | ) | Cynthia Reed Eddy |
| P. HORNING, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION[1]

Plaintiff Jesse Russell Simpson ("Simpson") commenced this lawsuit on May 20, 2019. At the time, Simpson was a federal inmate designated to the Federal Correctional Institute ("FCI") Loretto. (ECF No. 1). Prior to service being effectuated, Simpson filed an Amended Complaint on June 20, 2019 (ECF No. 9) and then filed a Second Amended Complaint ("SAC") on August 22, 2019 (ECF No. 18), which remains his operative pleading. Named as defendants in the SAC are a number of FCI Loretto staff members: Vicky Moser, Warden; Paul Horning, Food Service

---

[1] In accordance with the provisions of 28 U.S.C. § 636(b)(1), the identified and served parties have voluntarily consented to jurisdiction by a United States Magistrate Judge, including entry of final judgment. (ECF Nos. 48, 62, 68). While unserved defendants generally must also consent for a magistrate judge to exercise jurisdiction based on "consent of the parties" under 28 U.S.C. § 636(c), *see Williams v. King*, 875 F.3d 500 (9th Cir. 2017), this Court is not aware of any decision holding that consent is necessary from defendants who are both unserved and unidentified. Courts disregard such defendants in other contexts, including contexts affecting jurisdiction. *See, e.g.*, 28 U.S.C. § 1441(b)(1) (providing that for removal based on diversity of citizenship, "the citizenship of defendants sued under fictitious names shall be disregarded"); *Fat T, Inc. v. Aloha Tower Assocs. Piers 7, 8 & 9*, 172 F.R.D. 411, 414–15 (D. Haw. 1996) (reaching the same conclusion for diversity jurisdiction with respect to cases initially filed in federal court). The Court therefore concludes that consent of the unserved and unidentified defendants in this case, specifically Loretto FCI Medical Staff Members and Loretto FCI Psychology Staff Members, is not necessary to proceed under § 636(c).

Administrator; Ryan Forlina, Correctional Counselor; Sean Miles, Unit Manager; Dr. Matthew Rabinowitz, Chief Psychologist, N. Weidlich, Health Services Administrator; FCI Loretto Medical Staff; and FCI Loretto Psychology Staff Members. Simpson brings the following three claims against all the defendants: (1) violation of rights against cruel and unusual punishment, under the Eighth Amendment and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971);[2] (2) violation of rights under the American with Disabilities Act of 1990; and (3) violation of rights under Section 504 of the Rehabilitation Act.

Pending before the Court is Defendants' Motion to Dismiss or, in the alternative, For Summary Judgment (ECF No. 31), to which Plaintiff has filed a response and brief in opposition (ECF Nos. 57 and 58). For the reasons below, the motion will be granted in part and denied in part.

## I.  Factual and Procedural History

Distilled to its essence, through the SAC, Simpson alleges that he has been diagnosed with Severe Anxiety Disorder and Asperger's Syndrome, as well as other mental health conditions, and that upon his arrival at FCI Loretto, he twice attempted to eat in the dining hall with other inmates but suffered severe anxiety and panic attacks due to his "intense fear of large groups of people." SAC, Attachment A.2. As a result, he resorted "to eating solely out of the inmate commissary at his own expense," and his health suffered due to the poor selection of food in the commissary and his dietary restrictions. SAC at 3. His requests for accommodations to allow him to eat away from other inmates in the dining hall or for permission to bring the food from the dining hall to his cell were denied. He was informed that food could not be removed from the dining hall pursuant to BOP

---

[2]   A *Bivens* action, as it is known, recognizes an implied cause of action directly under the authority of the U.S. Constitution, where there is an absence of any statute specifically conferring the cause of action. In this case, Plaintiff alleges Defendants violated his Eighth Amendment rights under the U.S. Constitution.

policy. According to Simpson, while Defendants have refused to accommodate him, they do accommodate other prisoners,

> Food Service regularly gives out bagged meals for all inmates during holidays, gives inmates with diabetes take out food every day to a large number of inmates, regularly gives Jewish inmates take out food to celebrate Shabbos meal in synagogue services, gives Native Americans take out food for "sweat lodge" rituals, gives Muslim breakfast bags during Ramadan holiday month, and gives Wiccan inmates take out food for their ceremonies. Clearly, many inmates are being allowed to take food out of Food Service for religious, medical, and convenience reasons.

SAC at 9 (ECF No. 18). In Counts One and Two of the SAC, Simpson claims that FCI Loretto staff have violated the ADA and the Rehabilitation Act by refusing to provide him with a reasonable accommodation to eat from Food Service and in Count Three, he alleges that FCI Loretto staff have subjected him to cruel and unusual punishment in violation of the Eighth Amendment by refusing to provide necessary accommodations to allow him to eat from FCI Loretto Food Service. As relief, Simpson seeks monetary damages as well as equitable relief. *Id*. at 36-37.

Defendants filed the instant motion to dismiss for failure to state a claim, or in the alternative, motion for summary judgment (ECF No. 31), with a brief in support and attached 652 pages of exhibits. (ECF Nos. 32 and 32-1, Exhibits 1 - 7). The Court issued a response order in which it informed the parties that the motion to dismiss would be converted into a motion for summary judgment under Federal Rule of Civil Procedure 56 with respect to the issue of Simpson's exhaustion of administrative remedies only. (ECF No. 47). The parties were further advised as follows:

> conversion to a motion for summary judgment on the remaining issues is not warranted as there has been no discovery conducted by the parties; thus, no factual record has been developed, and Plaintiff may not be able to present enough material to oppose a motion for summary judgment. Here, where much of the evidence presented presents clear issues of material fact, the Court declines Defendants' invitation to entertain the "Motion to Dismiss in the form of a Motion for Summary

> Judgment," and instead, will treat the pending motion with the exception of the exhaustion issue, as a motion to dismiss.

*Id*.  Simpson, thereafter, filed a brief and response in opposition (ECF Nos. 56 and 57), as well as 146 pages of exhibits (Exhibits 1 – 7). (ECF No. 59).  The matter is fully briefed and ripe for resolution.

On May 6, 2020, Simpson notified the Court that he had been released to home confinement in Clarksville, Maryland. (ECF No. 72).

## II. Standard of Review

Three relevant standards of review are at issue in Defendants' motion to dismiss / motion for summary judgment:  Federal Rule of Civil Procedure ("Rule") 12, subsections (b)(1) and (b)(6); and Rule 56.

A.   *Federal Rule 12(b)(1)*

Under Rule 12(b)(1), a court must grant a motion to dismiss if there is a lack of subject matter jurisdiction.  Fed.R.Civ.P. 12(b)(1). A plaintiff bears the burden of persuasion that federal jurisdiction is present. *Saint Vincent Health Ctr. v. Shalala*, 937 F. Supp. 496, 501 (W.D. Pa. 1995) (citing *Kehr Packages, Inc. v. Fidelcor, Inc*., 926 F.2d 1406, 1409 (3d Cir. 1991)).  The threshold to survive a motion to dismiss under Rule 12(b)(1) is lower than under Rule 12(b)(6). *Lunderstadt v. Colafella*, 886 F.2d 66, 70 (3d Cir. 1989). This is because dismissal for lack of jurisdiction cannot be predicated on the mere probability that a plaintiff's legal theories are false; a court will only dismiss for a lack of jurisdiction if a plaintiff's legal theories (1) are solely proffered to obtain federal jurisdiction but otherwise are immaterial, or (2) are "insubstantial on their face." *Growth Horizons, Inc. v. Del. Cnty., Pa.,* 983 F.2d 1277, 1280 (3d Cir. 1993) (quoting *Bell v. Hood*, 327 U.S. 678, 773, 776 (1946)).

4

B.     *Federal Rule 12(b)(6)*

A motion to dismiss filed pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The Supreme Court has issued two decisions that pertain to the standard of review for failure to state a claim upon which relief could be granted. In *Ashcroft v. Iqbal*, the Supreme Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and " 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. *Id*. at 679. The Court of Appeals has summarized the inquiry as follows:

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim*." Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Although this Court must accept the allegations in the Complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baroka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complaintant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). When matters outside of the pleadings are presented to the Court on a Rule 12(b)(6) motion, the Court has the discretion to exclude such matters from consideration. Fed.R.Civ.P. 12(d); Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 905 n.3 (3d Cir. 1997). If matters outside the pleadings are presented to, and not excluded by, the court, a motion to dismiss must be converted to a motion for summary judgment. *See* Fed.R.Civ.P.12(d).

C.     *Federal Rule of Civil Procedure 56*

Under Rule 56, summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element to that party's case and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence or the lack thereof that demonstrates the absence of a genuine issue of material fact. *National State Bank v. Federal Reserve Bank of New York,* 979 F.2d 1579, 1582 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that

there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). The inquiry, then, involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Brown v. Grabowski,* 922 F.2d 1097, 1111 (3d Cir. 1990) (quoting *Anderson,* 477 U.S. at 251–52). If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. *Anderson,* 477 U.S. at 249–50. Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. See Fed.R.Civ.P. 56(c); *Celotex,* 477 U.S. at 324; *J.F. Feeser, Inc., v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1542 (3d Cir. 1990).

In reviewing a motion for summary judgment, the Court does not make credibility determinations, and summary judgment is "inappropriate when a case will turn on credibility determinations." *El v. Southeastern Pennsylvania Transp. Authority*, 479 F.3d 232 (3d Cir. 2007), *citing Anderson*, 477 U.S. at 255.

### III. Discussion

As a preliminary matter, the Court will consider under Rule 12(b)(1) whether Simpson's claims for equitable relief should be dismissed as moot and whether Simpson's *Bivens* claims against the Defendants in their official capacities are barred by sovereign immunity. The Court then will determine under Rule 56 whether Defendants are entitled to judgment on Simpson's remaining

claims because he failed to exhaust his administrative remedies. And finally, the Court will consider, if necessary, under Rule 12(b)(6) whether the remaining claims should be dismissed for failure to state a claim upon which relief can be granted.

A.   Rule 12(b)(1)

    1.   *Request for Equitable Relief*

In his SAC, Simpson seeks equitable relief in the form of a judicial declaration that Defendants "knowingly and willfully" violated his constitutional rights and an order requiring Defendants to provide him with three takeout meals per day and enjoining Defendants from retaliating against him as a result of this case. *Id.*

"[A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them." *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)); *see also Abdul-Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir. 1993). That Simpson is no longer incarcerated renders his claims for prospective injunctive and declaratory relief moot. *See Cobb v. Yost*, 342 Fed. App'x 858, 859 (3d Cir. 2009) (per curiam). Simpson's claims for damages, however, are not mooted by his release. *See Sutton*, 323 F.3d at 249; *Allah v. Seiverling*, 229 F.3d 220, 222 n.2 (3d Cir. 2000).

Accordingly, the Court will *sua sponte* dismiss Simpson's claims for declaratory and injunctive relief as moot, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

    2.   Sovereign Immunity Bars Official Capacity *Bivens*' claims

"There is no such animal as a *Bivens* suit against a public official . . . in his or her official capacity. Instead, any action that charges such an official with wrongdoing while operating in his or her official capacity . . . operates as a claim against the United States." *Watson v. Hollingsworth*,

8

741 F. App'x 545, 550-51(10th Cir. 2018) (citations omitted). *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (holding that suits brought against an official in his or her official capacity are, "in all respects other than name, to be treated as a suit against the" United States).

Simpson has identified no facts or basis for finding a waiver of sovereign immunity by the United States. Because any claim against Defendants in their official capacities is a claim against the United States, and because there has been no waiver of sovereign immunity in this context, the Court lacks subject matter jurisdiction over any official-capacity *Bivens* claims against Defendants. Accordingly, all *Bivens* claims against Defendants in their official capacities will be dismissed for lack of subject matter jurisdiction.[3]

B.   Rule 56 - The Bureau of Prisons' Administrative Exhaustion Requirement

The Bureau of Prisons has established a multi-tiered administrative procedure with respect to prisoner complaints. 28 C.F.R. §§ 542.10, *et seq*. As part of this grievance procedure, prisoners should first present their complaints to staff, and staff are obliged to attempt to informally resolve any issues before a prisoner files a formal request for Administrative Remedy. *Id*., § 542.13(a). Next, if informal resolution is not successful, the prisoner may file a formal written complaint to the Warden on the appropriate form within twenty calendar day of the date on which the basis for the complaint occurred.  *Id*., § 542.14(a).   Third, if not satisfied with the warden's response, the prisoner may file an appeal to the Regional Director within twenty calendar days. *Id*., §542.15(a). The final step occurs if the prisoner is not satisfied with the Regional Director's response. The prisoner may then file an appeal of that decision to the General Counsel within thirty calendar days

---

[3]   Simpson appears to acknowledge that sovereign immunity bars his *Bivens* official capacity claims as he states in his response that "Plaintiff's official capacity claims are for injunctive relief only and monetary relief is restricted to Defendants in their individual capacities only." Response Br. at 40.

from the date of the Regional Director's response. *Id.*, §542.15(a). The Regional Director has thirty calendar days to respond and the General Counsel has forty calendar days to address the prisoner's concern. *Id.*, §542.18.

Defendants argue that while Simpson filed a Request for Administrative Remedy seeking to be exempt from eating in the dining hall, No. 977856, he was advised that his appeal was defective, and although given an opportunity to cure the defect, he failed to do so. In support of their argument, Defendants have submitted a declaration from Robin Summers, BOP Paralegal Specialist, in which she attests that a search of the BOP SENTRY system revealed that Simpson did not exhaust his administrative remedies with respect to his request for eating accommodations. Attached to the Declaration are 171 pages of SENTRY records,[4] and twenty-one pages of a printout, entitled Administrative Remedy Generalized Retrieval. *See* ECF No. 32-4 and 32-5. Defendants do not cite or direct the Court to any specific page(s) within these 192 pages. In fact, it appears that the vast majority of these records do not relate to the claims raised by Plaintiff in his SAC. Upon review of the materials that Defendants have submitted, the Court is unable to find as a matter of law that Simpson failed to exhaust his claims, especially in light of the evidence Simpson has offered.

In his response, Simpson provided the Court with copies of the actual documents related to his Administrative Remedy 977856 – Request for Eating Accommodations. *See* ECF No. 59-3. These records indicate that Simpson attempted to cure the defect, but that he was unable to secure the requested memo from Defendants which was requested from the Regional Office. Pl's Br. at 43.

---

[4] SENTRY records are computerized indices of requests for administrative review filed by federal prisoners kept by the BOP.

At this time, the state of the record is such that it would be inappropriate to enter judgment in favor of Defendants. Accordingly, Defendants' motion will be denied without prejudice to Defendants renewing their request for summary judgment after the parties engage in discovery.

C. Rule 12(b)(6)

    1. *Eighth Amendment Claims*

The first question to be addressed is whether Simpson can bring his Eighth Amendment claims under *Bivens,* which recognized an implied cause of action to remedy a constitutional violation. Since *Bivens*, the Supreme Court has recognized an implied damages remedy under the Due Process Clause of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 229 (1979), and the Cruel and Unusual Punishments Clause of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980). "In both *Davis* and *Carlson*, [the Supreme Court] applied the core holding of *Bivens*, recognizing in limited circumstances a claim for money damages against federal officers who abuse their constitutional authority." *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 67 (2001). "These three cases—*Bivens, Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself," *Ziglar v. Abbasi*, -- U.S. --, 137 S.Ct. 1843, 1855 (2017), and "over the course of nearly four decades, the Supreme Court has repeatedly refused to recognize *Bivens* actions in any new contexts. *Cf. Carlson*, 446 U.S. 14, 100 S.Ct. 1468 (providing the last set of novel circumstances in which the Court implied a *Bivens* action)." *Vanderklok v. United States*, 868 F.3d 189, 198 (3d Cir. 2017).

In *Ziglar v. Abbasi*, -- U.S. --, 137 S.Ct. 1843 (2017), the Supreme Court recognized *Bivens* actions but held that it will now take a more "cautious" approach to each *Bivens* case to determine if the action falls under the previous *Bivens* claims and will not accept a *Bivens* action that is brought

in a new context. The Court made clear that "expanding the *Bivens* remedy is now a disfavored judicial activity," *id*. at 1857, and that the purpose in taking this new cautious approach is to avoid intruding on the role of Congress to enact statutes for claims outside the current *Bivens* context. A *Bivens* action falls outside of the current *Bivens* context and is thus "novel" "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Id.* at 1859. Courts should no longer imply rights and remedies as a matter of course, "no matter how desirable that might be as a policy matter, or how compatible with the statute [or constitutional provision]. *Id.* at 1856 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001)); *Vanderklok*, 868 F.3d at 200.

If a claim presents a new context in *Bivens*, then the court must apply the two-step inquiry announced in *Wilkie v. Robbins*, 551 U.S. 537 (2007): (i) whether alternative remedies exist and (ii) whether there are special factors counseling against extension of *Bivens* into the new cause of action. *Id*. at 1857; *Vanderklok*, 868 F.3d at 200. At the second step, "the inquiry must concentrate on whether the judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Ziglar*, 137 U.S. at 1857-58. With these instructions in mind, the Court turns to Simpson's claims.

Simpson alleges that "Loretto FCI staff subjected [him] to cruel and unusual punishment in violation of the Eighth Amendment by refusing to provide necessary accommodations to eat from Loretto FCI Food Service." SAC at 15. (ECF No. 18). The SAC further states that Defendants knew that Simpson suffered from extreme anxiety and panic attacks and "[d]espite Plaintiff's repeated requests to eat physically separate from large crowds of people, prison officials have refused every resolution requested while refusing to offer any sort of compromise*." Id.* at 16.

Defendants contend that there is no implied cause of action under *Bivens* that would permit Simpson to proceed with this claim, and therefore Simpson's claim must be dismissed. Specifically, Defendants argue that

> the only *Bivens* claim under the Eighth Amendment recognized by the Supreme Court was in *Carlson*, 446 U.S. at 14, where it implied a remedy for <u>deliberately</u> failing to treat a prisoner's asthma. There is no similar allegation here. None of the Defendants are withholding food, deliberately or otherwise, from Plaintiff, nor has he plead as much.

Br. at 20-21. (ECF No. 32) (emphasis in original). In response, Simpson argues that his claim should not be considered through the lens of a "special accommodation claim" as Defendants suggest, but rather through the lens of an Eighth Amendment deliberate indifference to conditions of confinement claim.

The Eighth Amendment requires prison officials to provide humane conditions of confinement, including ensuring "that inmates receive adequate food, clothing, shelter and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). Simpson claims that Defendants were deliberately indifferent to his inability to eat in the dining hall. Through his SAC, he indicates that he spoke with the Defendants on multiple occasions about not being able to eat in the dining hall and explained that due to his "long standing, pre-incarceration medical diagnoses," he could not eat in the dining hall as he had "an intense fear of large groups of people. It makes me so afraid I can't eat in the dining hall like the other inmates. I have been eating out my locker for about a week." SAC, Attachment A.2. He sent an electronic request and submitted a formal Request for Administrative Review asking to be exempt from eating in the dining hall based on his medical conditions.

After careful consideration of the parties' positions and after conducting its own extensive research, the Court finds that Simpson's claims do not differ in any meaningful way from the

situation presented in *Carlson.* In fact, this case has significant parallels to *Carlson,* where the Supreme Court allowed a *Bivens* claim for prisoner mistreatment predicated on a violation of the Eighth Amendment.[5] The Supreme Court has explained its decision in *Carlson* as follows:

> In *Carlson,* we inferred a right of action against individual prison officials where the plaintiff's only alternative was a Federal Tort Claims Act (FTCA) claim against the United States. 446 U.S., at 18–23, 100 S.Ct. 1468. We reasoned that the threat of suit against the United States was insufficient to deter the unconstitutional acts of individuals. *Id.*, at 21, 100 S.Ct. 1468 ("Because the *Bivens* remedy is recoverable against individuals, it is a more effective deterrent than the FTCA remedy"). We also found it "crystal clear" that Congress intended the FTCA and *Bivens* to serve as "parallel" and "complementary" sources of liability. 446 U.S., at 19–20, 100 S.Ct. 1468.

*Correctional Services Corp.,* 534 U.S. at 67-68. Moreover, as noted by our sister court in *Leibelson v. Collins*,

> Deliberate indifference claims, like other claims brought pursuant to the Eighth Amendment, are frequently litigated and well-suited to judicial resolution. In this case, the Plaintiff brings a claim against an individual officer to whom she complained of her inability to access food in the dining hall without risking sexual abuse by other inmates. This case does not implicate national security, prison policy, or other executive or legislative functions. In short, no special factors cause the Court any hesitation in permitting a *Bivens* case to proceed on this claim.

*Leibelson v. Collins*, Civil Action No. 5:15-cv-12863, 2017 WL 6614102, at * 12 (S.D.W.Va. Dec. 27, 2017), *vacated in part on other grounds, appeal dismissed in part by Leibelson v. Cook*, 761 F. App'x 196 (4th Cir. 2019). *See also Dixon v. United States*, Civ. No. 20-5994, 2020 WL 3249231 (June 16, 2020) (commenting that "[t]here may be an implied remedy of damages for Eighth Amendment conditions of confinement claims by federal prisons, commonly known as a *Bivens* claim. *See Ziglar v. Abbassi*, 137 S.Ct. 1843, 1855 (2017)."); *Davis v. United States*, No. Civ. No. 20-5888, 2020 WL 317133, at *3 (D.N.J. June 12, 2020) (same).

---

[5]  In *Ziglar*, the Supreme Court held that the prisoner abuse claims against the warden arose in a new *Bivens* context since the claims were predicated on the Fifth Amendment, while the claims in

The Court recognizes that discovery may well reveal that the alleged conduct of Defendants does not give rise to an Eighth Amendment deliberate indifference claim, but at this stage of the litigation, the allegations of the SAC must be accepted as true and all reasonable inferences must be drawn in Simpson's favor.

  a. <u>Personal Involvement</u>

Having decided that Simpson can proceed on this claim, the next question to be addressed is whether the SAC alleges sufficient facts to survive a 12(b)(6) challenge. Defendants argue that the *Bivens* claim should be dismissed because the SAC does not allege facts showing that Defendants violated Simpson's constitutional rights. Specifically, Defendants argue (1) they were following BOP policy; (2) they were unaware of a risk of harm by enforcing BOP policy; (3) the only involvement of Defendants Forlina, Miles, and Moser was responding to administrative remedies; and (4) Dr. Rabinowitz is not personally involved in food services. The Court finds each of these arguments to be without merit.

As to Defendants' first and second arguments, the allegations of the SAC reflect that the BOP frequently serves food to inmates outside the dining hall. Further, the allegations of the SAC reflect that Plaintiff repeatedly informed Defendants that he had medical conditions which prohibited him from eating in the dining hall. Thus, both these arguments fail.

As to Defendants' third argument, as Defendants correctly point out, in many cases the mere review of grievances will not establish personal involvement in an underlying violation. Here, however, Simpson contends that Defendants Forlina, Miles, and Moser were presented with a grievance that was intended to correct an ongoing violation, not merely the denial of a grievance that had been brought to address a discrete, past violation. "Where a grievance alleges an ongoing

---

*Carlson* were predicated on the Eighth Amendment. *Ziglar,* 137 U.S. at 1864.

constitutional violation, a supervisory defendant who reviews it is personally involved in that violation because he is confronted with a situation he can remedy directly." *Harnett v. Barr*, 538 F. Supp.2d 511, 524-25 (N.D.N.Y. 2008). Simpson's allegations that Defendants Forlina, Miles, and Moser reviewed and denied his grievance which alleged an ongoing constitutional violation is sufficient to defeat a motion to dismiss. *See, e.g., Romero v. Folino*, No. 13-cv-0691 (W.D.Pa. Feb. 4, 2014), report and recommendation adopted by 2014 WL 710025 (W.D.Pa. Feb. 25, 2014); *Whitehead v. Rozum*, No. 11-102, 2012 WL 4378193 at *2 (W.D.Pa. Aug. 7, 2012) ("In the prison setting, where a grievance alleges an ongoing constitutional violation, a supervisory defendant who reviews it is personally involved in that violation because he is confronted with a situation he can remedy directly.") (citations omitted), report and recommendation adopted by, 2012 WL 4370929 (W.D.Pa. Sept. 24, 2012).

And Defendants' fourth argument likewise fails because according to the allegations in the SAC, Dr. Rabinowitz knew of Simpson's mental health issues and concerns and yet refused to recommend that an accommodation be provided.

These allegations – assumed here to be true – subject to proof at a later stage, plausibly show that each of the Defendants violated Simpson's rights under the Eighth Amendment.

### b. Quality Immunity

The final question to be addressed is whether Defendants are entitled to qualified immunity on the *Bivens* claims. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Thomas v. Tice,* 948 F.3d 133, 141 (3d Cir. 2020) (quoting *Reichle v.*

*Howards*, 566 U.S. 658, 664 (2012)). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.*

Defendants argue that they are entitled to qualified immunity because, even if there was an Eighth Amendment violation, "Plaintiff cannot identify clearly established constitutional precedent that would suffice to put prison officials on notice that he was entitled to special accommodations for diagnoses that were removed." Br. at 27 (ECF No. 32). Further, Defendants argue that "it would be implausible that Defendants knowingly violated a clearly established constitutional right merely by following the federal BOP Food Service manual of universal prison application." *Id.*

The Court has determined that the allegations of the SAC plausibly show that Defendants violated Simpson's constitutional rights under the Eighth Amendment. The law regarding deliberate indifference is sufficiently clear that officers should have been aware that their actions, if proven, violated the Constitution. Defendants' request for qualified immunity is denied without prejudice to being renewed after discovery has been completed.

2. *Rehabilitation Act Claims*

In order to state a claim under the Section 504 of the Rehabilitation Act, a plaintiff must allege the following: (1) that he or she is a qualified person, (2) with a disability, and (3) was denied access to a program or activity because of his or her disability. *See Furgess v. Pa. Dept. of Corrections*, 933 F.3d 285, 288-89 (3d Cir. 2019). Additionally, the plaintiff "must also show intentional discrimination under a deliberate indifference standard because he seeks compensatory damages." *Id*. at 289.

In his SAC, Simpson states that he has been diagnosed with multiple mental health issues, including, Asperger's Syndrome, Major Depression, PTSD symptoms, as well as Social Anxiety

17

Disorder. SAC at 12. Defendants argue that Simpson is not a person with a disability. Br. at 28 (ECF No. 32). In support of their argument, Defendants have attached the Declaration of Dr. Matthew Rabinowitz and approximately 400 pages of Plaintiff's medical records, which "suggest that [Simpson] does not suffer from either Autism Spectrum Disorder or Adjustment Disorder." Br. at 24; *see* Declaration of Dr. Matthew Rabinowitz (Exh. 5; ECF No. 32-9) and Simpson's Medical Records, Exh. 2, 3, and 4 (ECF Nos. 32-6, 32-7, and 32-8).

Because this issue is being decided under Rule 12(b)(6) standards, the Court will not review the Declaration of Dr. Rabinowitz or Simpson's medical records as neither was not attached to the SAC. At this early juncture of the proceeding, Simpson has arguably satisfied the "disability" requirement of the Rehabilitation Act. Even though Defendants may ultimately be able to prove that Simpson is not a person with a disability, the Court finds that he has pleaded sufficient facts in the SAC to survive a Rule 12(b)(6) challenge.

3. *ADA Claims*

As a preliminary matter, the Court notes that Simpson has not named a proper defendant with respect to his ADA claims. The proper defendant is the agency, in this case the Federal Bureau of Prisons, or its director (in his official capacity). *See* 42 U.S.C. 12131(1)(b). Normally, the Court would give Simpson the opportunity to correct this mistake by amendment. However, as is explained more fully below, even if Simpson had named a proper defendant, his ADA claim would fail. Accordingly, amendment would be futile.

Pursuant to Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §

12132 (emphasis added). The ADA's definition of a "public entity," is (a) any state or local government; (b) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (c) National Railroad Passenger Corporation, and any commuter authority. 42 U.S.C. § 12131(1). The federal government is not included within this definition and, thus, Title II of the ADA is not applicable to the federal government. Accordingly, Plaintiff's ADA claim will be dismissed for failure to state a claim.

### IV.  Conclusion

For all these reasons, Defendants' Motion to Dismiss or, in the alternative, For Summary Judgment will be granted in part and denied in part. The motion will be granted as to all *Bivens* claims against the Defendants in their official capacities and as to all claims brought under the Americans with Disabilities Act. The motion will be denied in all other respects.

Additionally, the Court will *sua sponte* dismiss Simpson's claims for equitable relief as moot.

An appropriate Order follows.


Dated:  September 21, 2020            s/Cynthia Reed Eddy
                                      Cynthia Reed Eddy
                                      Chief United States Magistrate Judge



cc:  Jesse Russell Simpson
     (via ECF electronic notification)

     Kezia Taylor
     U.S. Attorney's Office
     (via ECF electronic notification)